BUSH CO., Limited, v. CENTRAL R. CO. OF NEW JERSEY.

CENTRAL R. CO. OF NEW JERSEY v. BUSH CO., Limited.

(District Court, S. D. New York. April 26, 1904.)

1. SINKING OF CARFLOAT AT FLOAT BRIDGE—UNSEAWORTHY CONDITION.

Libelant left a carfloat, with nine loaded cars thereon, at respondent railroad company's float bridge at Communipaw, N. J. After respondent had removed the three cars on the starboard track, the float listed to port, and sank with the remaining cars. There was a depth of water of about two feet in the float, which was an unusual quantity; and, when the weight was removed from one side, the water flowed to the port side, and added to the weight there. *Held*, that it was not respondent's duty to inspect the float, and, as it was not notified of its condition, and removed the cars in the usual manner, it was not in fault, but the sinking must be attributed to the unseaworthy condition of the float.

In Admiralty. Cross-actions to recover damages for sinking of carfloat at the railroad company's float bridge.

Albert A. Wray, for Bush Co.

De Forest Bros. (George Holmes, advocate), for Railroad Co.

ADAMS, District Judge. The first of these actions was brought by the Bush Company, Limited, to recover from the Central Railroad

Company of New Jersey the damages, amounting to about $7,600, caused, it is alleged, by the improper handling on the part of the railroad company of the Bush Company's carfloat Independent Stores No. 3, which was towed to the railroad company's float bridge at Communipaw, New Jersey, on the 20th day of July, 1903. There were nine cars containing merchandise on the float of which the libellant had possession as bailee for hire. The cars were loaded on the float on three parallel sets of tracks, three on each track. The float was towed to the bridge by the Bush company's tug Independent, which left after the float was fastened to the bridge. Subsequently three of the cars were removed from the north side of the float and shortly afterwards the float took a list to port and filled and sank, decks to, causing damages to the float and to the remaining six cars and contents. The Bush Company alleges that the float was seaworthy and the accident caused by negligent handling on the part of the railroad company, and that as to the cargo, the railroad company was liable as a common carrier, in the absence of affirmative proof that the damages arose from some cause for which it was not responsible.

The second action was brought by the railroad company to recover the damages caused by the blocking of its float bridge. The contention is, that the float was unloaded in the usual manner and that the accident was due to her unseaworthy condition in having so much water in her, that when the cars on one side were removed, the weight of water flowed to the other side, causing the float to go down on that side, submerging the outer corner and permitting additional water to enter through a slatted hatchway, with the effect of throwing more weight to port and causing the damages sustained by both parties.

The testimony shows that the float had considerable water in her when she arrived at the railroad company's place. The Independent spent about two hours in pumping on this water and it is contended by the Bush Company, removed the substantial part of it, leaving the float in a seaworthy condition, and that the cause of the accident was the negligent manner of fastening the float to the bridge in the unusually low tide which prevailed, rendering it necessary to force the floating end of the bridge down in the water low enough to allow the float to be toggled on, so that when the weight of a locomotive and a car, which were placed upon the bridge for additional weight, was removed, the bridge arose about 2 feet and depressed the outer end correspondingly.

The testimony does not show that there was any unusual condition of the tide on the occasion, and the facts sustain the railroad company's contention generally. There was an unusual depression of the bridge where the float was fastened to it, owing to her low freeboard. This was partly caused by the water in her, but she was ordinarily lower than most floats and the depression did not excite especial attention. The condition could have been determined by a careful examination, but it was not apparent that a disastrous result would follow an attempt to discharge her and the railroad company can not be held in fault in view of the fact that the proximate cause of the loss was the unseaworthiness of the float. It seems to be the practice of the company to carefully inspect its own floats before they are toggled to the bridge and not to make any fast having more than about 6 inches of water in them,

while this float had about 2 feet, but it appears that it is neither usual nor incumbent upon the company to examine outside floats, which are expected to notify the bridge men if there is anything wrong with them. No such notice was given in this case by the Bush Company's representatives on the scene, and under the circumstances, it can scarcely be said that the railroad company was legally in fault.

The libel of the Bush Company should be dismissed and that of the railroad company sustained, with an order of reference. Decrees accordingly.